```
                                                              JS-6
                                                               "O"
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN AND BARBARA PARCHAN, | CASE NO. SACV 10-1225 JST (MLGx) |
| Plaintiffs, | |
| vs. | **ORDER GRANTING WITH PREJUDICE DEFENDANT'S MOTION TO DISMISS** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is Defendant United States of America's ("Government's") Motion to Dismiss Warren and Barbara Parchans' ("Plaintiffs'") complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 8.) Plaintiffs filed an opposition (Doc. 11), and the Government filed a reply (Doc. 12). Having read the briefs, heard oral argument, and taken the matter under submission, the Court finds that it lacks subject matter jurisdiction over Plaintiff's claims and GRANTS with prejudice the Government's Motion to Dismiss.

## II. BACKGROUND

Plaintiff Warren Parchan is and was during the years in question the 100% shareholder of De La Secura, Inc. ("DLS"), a commercial real estate corporation. (Compl. ¶ 8.) In 2001 and 2002, both Mr. Parchan and DLS were named defendants in a lawsuit pertaining to a DLS contract. (*Id*. ¶ 9.) Plaintiffs filed their 2001 federal income tax return on October 15, 2002. (*Id*. ¶ 10.) In Schedule A of their 2001 return, Plaintiffs deducted half the legal fees they spent defending Mr. Parchan in the lawsuit. (*Id.* ¶ 2).

Plaintiffs filed their 2002 federal income tax return on October 15, 2003. (*Id.* ¶ 11). Plaintiffs deducted the remaining half of the fees they incurred defending Mr. Parchan's lawsuit on Schedule E of their 2002 federal income tax return. *Id.* The accounting firm Squar Milner Rheel & Williamson prepared both Plaintiffs' 2001 and 2002 returns. (*Id*. ¶ 10-11.)

The IRS subsequently audited both Plaintiffs' 2001 and 2002 returns, at which time Plaintiffs discovered they had paid the entirety of Mr. Parchan's legal fees in 2001. (*Id. ¶* 12.) Plaintiffs then filed an amended return ("First Amended 2001 Return") for the 2001 year seeking to deduct the entirety of Mr. Parchan's legal fees on Schedule A of their 2001 return. (*Id.* ¶ 13.) This amended return was filed on October 11, 2005. (Def.'s Mot. Dismiss at 4:1-6.) After the statute of limitations for filing a claim for refund on the 2001 return passed on October 15, 2005, Plaintiffs discovered that there was no legal benefit to

2

1  deducting the second half of their legal fees as a Schedule A deduction on the 2001 return,
2  but that they would be entitled to one if they placed the deduction under Schedule E for the
3  same year.  (Compl. ¶ 14).  In November of 2005, after the statute of limitations for filing
4  a refund claim with the IRS had elapsed, Plaintiffs submitted an additional amended 2001
5  return ("Second Amended 2001 Return") claiming all of Mr. Parchan's attorney fees as a
6  Schedule E expense.  (*Id.* ¶ 14.)  On February 6, 2006, the IRS rejected the Second
7  Amended 2001 Return since it was not filed within the relevant statute of limitations
8  period under IRC § 6511(a), three years from the filing of the original return.  (Def.'s Mot.
9  Dismiss at 4:13-19; Def.'s Req. Judicial Notice at 1.)
10         On March 21, 2006, the IRS issued a notice of deficiency to Plaintiffs relating to the
11  audit of their 2002 federal income tax return.  (Compl. ¶ 15.)  This notice disallowed the
12  Schedule E deduction for the attorney fees on the 2002 return because the fees had not
13  been paid in 2002.  *Id.*  In June of 2006, Plaintiffs filed a Tax Court petition asking for a
14  decision disallowing the deduction for legal fees they claimed on their 2002 federal
15  income tax return.  (*Id.* ¶ 16).  Plaintiffs wanted the Tax Court to enter this decision against
16  them because they believed it would enable them to avoid the statute of limitations on their
17  2001 return by triggering their right to claim a refund under the IRC's mitigation
18  provisions, 26 U.S.C. sections 1311 through 1314.  (*Id.*)
19         On August 21, 2006, the IRS assessed the deficiency reflected in the March 21,
20  2006 notice of deficiency.  (*Id.* ¶ 17.)  It amounted to $82,867, plus $14,577.05 in statutory
21  interest.  (*Id.*)  On October 30, 2006, the IRS sent a notice demanding that Plaintiffs
22  immediately pay the deficiency the IRS had assessed against them and indicating that the
23  IRS could file a Notice of Federal Tax Lien had it not already done so.  (*Id.* ¶ 18.)  In
24  response to this notice, Mr. Parchan promptly paid the assessment in full.  (*Id.* ¶ 19.)  The
25  IRS applied Mr. Parchan's payment of $99,759.57 to Plaintiffs' 2002 federal income tax
26  liability.  (*Id.*)  Both Plaintiffs and the Government agree that this assessment was made in
27  violation of the restrictions in 26 U.S.C. § 6213(a), which bars assessments relating to
28

3

matters before the Tax Court prior to the Court's final decision. (*Id.* ¶ 24; Def.'s Mot. Dismiss at 22:11-15, 25:1.)

On January 9, 2007, the Tax Court entered a stipulated decision providing that Plaintiffs were liable for a deficiency in 2002 income taxes in the full amount indicated in the 2002 notice of deficiency. (Compl. ¶ 20.) This decision became final ninety-one days after January 9, 2007. (*Id.* ¶ 21.) Plaintiffs filed a third amended 2001 return ("Third Amended 2001 Return") on April 8, 2008. (Def.'s Mot. Dismiss at 4 n.2.) This return sought a refund of $36,954, plus statutory interest, which is the amount Plaintiffs determined they would be entitled to if the deductions for the legal fees they claimed on their 2002 return had been correctly applied to their 2001 return. (Compl. ¶ 22.)

On April 9, 2008, Plaintiffs filed a refund claim for their 2002 income taxes ("First Amended 2002 Return") on the grounds that they were entitled to a refund because the assessment of the 2002 tax deficiency was illegal. (*Id.* ¶ 24.) On August 25, 2008, the IRS denied Plaintiffs Third Amended 2001 Return and denied Plaintiffs amended 2002 return a month later. (Compl. ¶ 25, 26.) Plaintiffs filed this action in federal court on August 12, 2010.

## III. LEGAL STANDARD

The applicable statute of limitations in this motion, 26 U.S.C. § 6532(a), is jurisdictional. *Yuen v. United States*, 825 F.2d 244, 245 (9th Cir. 1987). Because this is a suit against the United States, the doctrine of sovereign immunity applies and the suit must fit clearly within the terms of the statute by which the United States has consented to be sued. *United States v. Michel,* 282 U.S. 656, 658-60 (1931). A suit by a taxpayer for a refund is not an exception to this rule. *Id.* The United States has only consented to such suits according to the terms specified by Congress, including the applicable statutes of limitations. *Id.* Moreover, courts must give "regard to the rule of strict construction to be applied to waivers by the United States of its sovereign immunity from suit." *Id.*

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* A state law claim filed in federal court without a showing of diversity jurisdiction is an example of this. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* (finding defendant's 12(b)(1) motion to be factual, where defendant challenged whether grass residue constituted solid waste under the Resource Conservation and Recovery Act). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

The question of jurisdiction and the merits of an action are intertwined when the same statute provides the basis for both subject matter jurisdiction and the plaintiff's substantive claim for relief. *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983). Here, related sections of the IRC provide both the basis for subject matter jurisdiction and the plaintiff's substantive claims. When the jurisdictional and substantive issues are intertwined, the Court may apply the standard for summary judgment and grant the motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).

## IV. DISCUSSION

### A. The 2001 Tax Year

Plaintiffs' "federal court"[1] claim for relief on their 2001 taxes fails because Plaintiffs filed both their administrative claim with the IRS and their complaint after the respective statutes of limitations ran. Because Plaintiffs' argument that the mitigation provisions apply to this case fails as a matter of law, the mitigation provisions do not extend the statute of limitations period.

#### 1. *Plaintiffs' claim is barred by the statute of limitations.*

There are two separate statute of limitations periods that determine whether this court has subject matter jurisdiction over Plaintiffs' 2001 federal court claim: (1) how long after filing their initial return Plaintiffs had to file an administrative refund claim with the IRS, and (2) how long after the rejection of the administrative claim Plaintiffs had to file a complaint in federal court. A taxpayer cannot bring a lawsuit seeking the recovery of any excessive federal tax paid until "a claim for refund or credit has been duly filed" with the IRS. IRC § 7422(a). Such claims are time-barred "three years from the time the return was filed, or two years from the time the tax was paid," whichever expires later. IRC § 6511(a). Because Plaintiffs had paid their 2001 tax in full by the time they filed their initial 2001 federal income tax return on October 15, 2002, they had three years, until October 15, 2005, to file their refund claim for 2001.

The IRS accepted Plaintiffs' First Amended 2001 Return, which sought to deduct the second half of the legal fees under 2001 Schedule A, because they filed it on October 11, 2005, four days before the end of the statute of limitations imposed by section 6511(a). The IRS rejected Plaintiffs' Second Amended 2001 Return, which sought to deduct the second half of the legal fees under 2001 Schedule E, because it was filed after the October 15, 2005 deadline imposed by section 6511(a).

---

[1] The Court notes the distinction between the causes of action in this case and the tax "claims" filed with the IRS.

1  The IRC further states that no lawsuit may be brought under IRC section 7422(a)
2 after "the expiration of two years from the date of mailing by certified mail or registered
3 mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the
4 claim to which the suit or proceeding relates." IRC § 6532(a)(1). Because Plaintiffs'
5 Second Amended 2001 Return was rejected in 2006 and they did not file their complaint
6 until 2010, without the mitigation provisions Plaintiffs claim is clearly time-barred.

7  *2. The IRC mitigation provisions do not apply to Plaintiffs' claim.*

8  In order to invoke the mitigation provisions, a taxpayer must establish that (1) there
9 has been a final determination under IRC section 1313; (2) this determination must be
10 "inconsistent" with a determination made in another, i.e., prior, year, and (3) the taxpayer
11 meets one of the enumerated criteria in section 1312. *Beaudry Motor Co. v. United States*,
12 98 F.3d 1167, 1168 (9th Cir. 1996). The Ninth Circuit has consistently held that the
13 mitigation provisions must be construed narrowly. *See id.* at 1168; *Schwartz v. United*
14 *States,* 67 F.3d 838, 839-40 (9th Cir. 1995).

15  The Government does not contest Plaintiffs' assertion that they meet the first and
16 second requirements, (Def.'s Mot. Dismiss at 16:10-16), but does argue that Plaintiffs fail
17 to meet the third. As to the third element, of the circumstances warranting mitigation
18 listed in IRC section 1312, Plaintiffs assert that section 1312(4) applies to their case, which
19 reads: "(4) Double disallowance of a deduction or credit – The determination disallows a
20 deduction or credit which should have been allowed to, but was not allowed to, the
21 taxpayer for another taxable year, or to a related taxpayer." 26 U.S.C. § 1312(4).

22  The determination in question is the Tax Court's decision not to allow Plaintiffs to
23 apply the second half of their legal fees as a deduction on their 2002 return. Plaintiffs
24 argue that they meet this double disallowance of a deduction or credit criterion because the
25 Tax Court's determination disallows the application of the second half of the legal fees to
26 Schedule E of their 2002 return and the IRS rejected their Second Amended 2001 Return,
27 which sought to apply the second half of the legal fees to Schedule E of their 2001 Return.
28 (Pl.'s Op. Def.'s Mot. Dismiss 14:7-14.) The Government counters that the section

1312(4)'s requirement that the issue span at least two taxable years was not met. Because Plaintiffs' First Amended 2001 Return included the second half of the legal fees in Schedule A of the 2001 Return, which was accepted by the IRS, the deduction at issue has already been "allowed," albeit with no benefit to Plaintiffs. Thus, a double disallowance did not occur in this case.

Furthermore, Ninth Circuit precedent bars the use of the mitigation provisions in this case. The *Beaudry* court found that "[t]he IRC's mitigation provisions were not intended to apply to those situations in which the taxpayer could have filed a timely claim for refund but did not do so," and that, "the mitigation provisions 'cannot be invoked by a taxpayer who has slept on his rights and allowed the statute of limitations to run when he could have filed a refund claim within the statute of limitations.'" *Beaudry Motor*, 98 F.3d at 1169 (quoting *United States v. Rushlight*, 291 F.2d 508, 519 (9th Cir. 1961)). In the instant case, Plaintiffs were undoubtedly able to file a timely claim for a refund because they actually did so: their First Amended 2001 Return applied the deduction for the legal fees they erroneously made on their 2002 return to their 2001 return. Plaintiffs' fundamental problem is not that the IRS refused to let them apply the deduction they mistakenly declared on their 2002 return to their 2001 return once the error was corrected—it is that, through their own error, they derived no tax benefit when they opted to apply the deduction to Schedule A, rather than Schedule E, of the 2001 return.

Plaintiffs argue that "[t]he IRS, having denied the second claim for refund for 2001 on the basis that a Schedule E deduction for legal fees is not the same as a Schedule A deduction for legal fees, may not now claim that are the same thing for the purpose of the Mitigation provisions." (Pl.'s Op. Def.'s Mot. Dismiss 14:24-26.) Contrary to this assertion, the Government is claiming nothing of the sort. According to the Government, the 2001 Schedule A deduction was allowed because it was asserted in a timely claim and the 2001 Schedule E deduction was not considered because it was time-barred. Plaintiffs were free to file a Schedule E deduction on the 2001 return after they knew their 2002 Schedule E deduction was improper. However, this case is one where Plaintiffs have

8

"slept on [their] rights," not one where they lost an opportunity to file a legitimate deduction because they were unaware that it was improperly applied to another year until after the statute of limitations prevented them from making a correction.

Because the mitigation provisions do not apply to Plaintiffs' 2001 claim, they cannot serve as a basis for extending the statute of limitations. The Government states that Plaintiffs' filing of the Third Amended 2001 Return has no bearing on the statute of limitations because courts have held that repetitious filing of an identical refund claim, once rejected, does not start the limitation period running again. Def.'s Mot. Dismiss at 12:20-21 (citing *Huettl v. United States*, 675 F.2d 239, 241 (9th Cir. 1982) and several earlier decisions from other circuits.) Plaintiffs counter that their second and third amended returns are based on different legal theories: the Third Amended 2001 Return is based on the theory that the mitigation provisions mean that the statute of limitations to file a claim does not apply to the case, whereas the Second Amended 2001 Return does not invoke the mitigation provisions at all. In *Huettl*, the Ninth Circuit offered the following guidance: "If the second claim is based on different facts or *legal theories* from those contained in the first, then the second claim may merit independent treatment from the statute of limitations of I.R.C. § 6532(a)(1)." *Huettl v. United States*, 675 F.2d 239, 242 (9th Cir. 1982) (citing *Charlson Realty Co. v. United States*, 384 F.2d 434, 439 (Ct. Cl. 1967)) (emphasis added).

Although Plaintiffs' invocation of the mitigation provisions in the Third Amended 2001 Return arguably distinguishes it from the first and second amended returns, *Huettl* merely indicates that claims based on new legal theories *may* warrant independent treatment from the statute of limitations. This Court finds that when the legal theory advanced by a plaintiff clearly fails as a matter of law, as is the case here, no such independent treatment is warranted. Thus, because the mitigation provisions do not apply to Plaintiffs' circumstances, they provide no exception to the standard statute of limitations period, and Plaintiff's 2001 claim must be dismissed.

### B. The 2002 Tax Year

This court has no jurisdiction over Plaintiffs' 2002 claim because Plaintiffs previously litigated matters concerning that tax year in Tax Court. The IRC states: "If the taxpayer files a petition with the Tax Court, the district court or the United States Court of Federal Claims, as the case may be, shall lose jurisdiction of taxpayer's suit to whatever extent jurisdiction is acquired by the Tax Court of the subject matter of taxpayer's suit for refund." IRC § 7422(e). The Supreme Court has found that Under 7422(e) such a claimant is given the option of pursuing his suit in the District Court or in the Tax Court, but he cannot litigate in both. *Flora v. United States*, 362 U.S. 145, 166 (1960). The Ninth Circuit has left no doubt as to the reach of the forum choice's preclusive effect: "It is not the decision which the Tax Court makes but the fact that the taxpayer has resorted to that court which ends his opportunity to litigate in the District Court his tax liability for the year in question." *United States v. Wolf*, 238 F.2d 447, 449 (9th Cir. 1956) (quoting *Elbert v. Johnson*, 164 F.2d 421, 424 (2nd Cir. 1947)). A later Ninth Circuit case indicates reiterates this position in even starker terms:

> Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year.
>
> There can be no question that when the taxpayer petitioned the Tax Court to redetermine the asserted deficiency, the Tax Court acquired jurisdiction to decide the entire gamut of possible issues that controlled the determination of the amount of tax liability for the year in question. A party cannot, in such a case, by failing to raise an issue, or by asking the court not to consider

it, escape the Res judicata effect of the decision. This is hornbook law.[2]

*Russell v. United States*, 592 F.2d 1069, 1072 (9th. Cir. 1979). The Government argues that this District Court lost jurisdiction over claims pertaining to the 2002 tax year when Plaintiffs filed their complaint in Tax Court in 2006.

Plaintiffs counter that *res judicata* does not apply because the Ninth Circuit and other jurisdictions have recognized that there is a distinction between challenging the amount of a tax and challenging the procedural aspects of tax assessment, (Pl.'s Op. Mot. Dismiss 15:16-18). To support this assertion, Plaintiffs cite to *In re Bunyan*, a case they say demonstrates that the Ninth Circuit has made it "very clear" that premature assessments are void. (Pl.'s Op. Def.'s Mot. Dismiss at 16:7.) But Plaintiffs' interpretation of the case makes questionable inferences. The Ninth Circuit frames the issue in *Bunyan* as follows:

> Both parties agree that the bankruptcy court lacks jurisdiction to determine the *amount* of the tax deficiencies, because that issue was litigated before and decided by the tax court in the underlying tax court litigation. The issue is whether the *legality* of the assessments was contested before and adjudicated by a judicial tribunal of competent jurisdiction. Specifically, the question is whether the proceedings before our court seven

---

[2] The *Russell* court later notes that "We have held that there is an exception to the foregoing well established rule, as applied to the Tax Court, because the Tax Court has no equity jurisdiction." *Russell*, 592 F.2d at 1072. This exception does not apply to Plaintiffs' case. The *Russell* court found that the taxpayer's assertion that she was forced into tax court because of her inability to pay an assessment was insufficient to warrant equity jurisdiction because she could have appealed that court's decision for free. *Id.* In the instant case, Plaintiffs chose to go to tax court, failed to challenge the assessment there, stipulated to a final judgment, and let their window for appeal elapse.

|   |   |
|---|---|
| 1 | years before the commencement of the bankruptcy proceedings |
| 2 | satisfy the requirements of prior contestation and adjudication. |

*In re Bunyan*, 354 F.3d 1149, 1151-1152 (9th Cir. 2004).  The final action the Ninth Circuit took in the case seven years before the 2004 decision was to dismiss the plaintiffs' appeals from tax court as untimely.  *In re Bunyan*, 354 F.3d at 1151.  In the 2004 decision, the Ninth Circuit held that the Tax Court's decision became final 90 days after the Ninth Circuit dismissed the appeal as untimely and that the bankruptcy court was therefore precluded from determining the legality of the assessments.  *Id.* at 1153.  Plaintiffs seize on the fact that the Ninth Circuit did not hold that the *Bunyan* plaintiffs were barred by *res judicata* simply because they went to Tax Court.  (Pl.'s Op. Def.'s Mot. Dismiss 17:3).  This is, however, unremarkable since *Bunyan*, unlike the instant case, went to the Ninth Circuit directly from Tax Court on appeal.  There is no indication in *Bunyan* that had the earlier Tax Court decision not been appealed to the Ninth Circuit, the Tax Court's decision itself would have lacked *res judicata* effect.  *Bunyan* therefore has no bearing on the instant case.

Plaintiffs further argue that they must have the ability to litigate in federal court because the assessment of their 2002 taxes was illegal under 26 USC § 6213, which prohibits assessment while a Tax Court case on the matter is open.  The Government concedes that the assessment was illegal, but argues that that is irrelevant to the refund issue. (Def.'s Mot. Dismiss 22:15-20.)   Ninth Circuit case law indicates that the Government is correct.

The Ninth Circuit has held that "the taxpayer must show, in an action for refund of taxes illegally collected, that he does not owe the tax. We hold this to be true regardless of the legality of the Commissioner's action in collecting the alleged deficiency…." *Van Antwerp v. United States*, 92 F.2d 871, 873 (9th Cir. 1937).  Because Plaintiffs have failed to show that the amount they paid on their 2002 income taxes is incorrect, this holding bars their claim.  (Def.'s Mot. Dismiss 22:18-19.)

1    Plaintiffs assert that *Van Antwerp* has been "effectively overruled" by subsequent
2  Ninth Circuit decisions, but this argument is baseless.  Plaintiffs ignore the Ninth Circuit's
3  1992 decision in *Powelson v. United States*, 979 F.2d 141, 145 (9th Cir. 1981), which
4  clearly indicates that *Van Antwerp* is still good law, and instead rely on a pre-*Powelson*
5  Ninth Circuit decision, *Goodwin v. United States*, 935 F.2d 1061 (9th Cir. 1991), that does
6  not mention *Van Antwerp*.  Without addressing *Powelson*, there can be no argument that
7  *Van Antwerp* is no longer the law of the circuit.   In *Powelson*, the Ninth Circuit noted that
8  one of its previous decisions had found an exception to the *Van Antwerp* rule in situations
9  where a taxpayer's action "so closely resembles an action for tortious conversion that to
10 deny relief would be inequitable."  *Powelson*, 979 F.2d at 145 (discussing *Martinez v.*
11 *United States,* 669 F.2d 568, 569 (9th Cir.1981)).  The court further stated that:

> *Martinez* and *Van Antwerp* are not irreconcilable. In *Van Antwerp* we were never presented with, nor did we consider, the possibility that an exception to the overpayment requirement in refund actions could exist based on the nature of the action itself. Having considered that argument for the first time in *Martinez,* we held that a refund may be obtained, even when the taxpayer has shown no overpayment, if his action so closely resembles an action for tortious conversion that to deny relief would be inequitable. We conclude these two cases are sufficiently dissimilar that en banc review is unnecessary.

23 *Powelson*, 979 F.2d at 145.
24    Thus, although the *Powelson* decision affirms a previous exception to *Van Antwerp*,
25 it also indicates that the central holding of *Van Antwerp* is alive and well.  Plaintiffs' case
26 does not fall under the *Martinez* exception as there is nothing resembling unlawful
27 conversion here.  Though the IRS threatened to impose a lien on Plaintiffs' property,
28 Plaintiffs paid the amount owed to the IRS and their property was never seized.  This is not

13

analogous to *Martinez*, where the Plaintiff was arguing that the IRS must return his property to him after the state police had illegally seized it and turned it over to the agency. *Martinez*, 669 F.2d at 568. Here, even though the assessment that induced Plaintiffs' payment was clearly illegal, Plaintiffs' have no grounds to seek a refund on their 2002 return absent a showing that the amount they paid was too high.

Because Plaintiffs' claim for a refund on their 2002 taxes is barred by *res judicata* after they chose to litigate that tax year in Tax Court, their claim must be dismissed. The illegal assessment creates no exception to this clear rule.

## V.  CONCLUSION

For the reasons stated above, the Court lacks subject matter jurisdiction over Plaintiff's claims and therefore GRANTS with prejudice the Government's Motion to Dismiss.

DATED: March 29, 2011                **JOSEPHINE STATON TUCKER**
                                     JOSEPHINE STATON TUCKER
                                     UNITED STATES DISTRICT JUDGE